Ms. Pickett, you go first. Thank you, Dr. Adams. I'm going to get a piece of paper from Ashley Pickett, appearing on behalf of West Marine Products, Incorporated. Before I begin, I would like to please reserve three minutes for rebuttal. That's fine. Thank you. This appeal term, plaintiff has met her burden to prove either one-third or two-thirds of the community class were both U.S. and California citizens, not only residents, as of the date of removal. There are five main points that this court should consider. First, it is indisputable that CAFO jurisdiction existed here. The district court had jurisdiction properly over this county. And the question thus is whether plaintiff met her burden to prove that a court that would allow a court to abstain in favor of CAFO jurisdiction, with importantly, all presumptions running in favor of the court maintaining jurisdiction, and even sensible guesswork precluded, was met here. The second point is how do you prove citizenship? Well, as this court held in Mondragon, one way is for a plaintiff to define a class to be limited to California citizens, something plaintiff should not do here. Second, they also could have done a survey. Now, what we see here, very importantly, in excerpt of record, page 38, is that the plaintiff did actually reach out to putative class members. She had their last name and email addresses, last known phone numbers, and in fact sent a letter, a physical letter also, to each putative class member in this case, seeking information about their U.S. and state citizenship. Yet she chose not to present any evidence from that survey to the court. And instead, the only evidence that was active in the court was the only two putative class members that were asked about their citizenship. When they were asked, they spoke specifically to the fact that, despite working and living in California during the putative class period, they were not California citizens. So third, time and time again, this court has held that mere residency does not establish state, much less U.S. citizenship. Yet that is all, at most, that plaintiff offers here as the date of removal. Fourth, U.S. citizenship simply was not presented. There was literally zero evidence of putative class members' U.S. citizenship presented to the court. Would someone really presume or speculate that just because someone is present in the United States, they are a U.S. citizen? Of course not, yet that is exactly what plaintiff asked the court to do and what the court did here. Let me ask you to focus on what was clearly erroneous about the factual finding or the inferences drawn by the district court. I have to say it does not seem unremarkable to me that under the circumstances presented here and the evidence submitted here, that the district court had a basis to infer that at least one-third of the class consisted of citizens of California. What was wrong with the inferences? Your Honor, they were pure speculation. They were pure guesswork. No, stop. There was evidence, wasn't there? Your Honor, the only evidence that was presented... Well, as soon as you say only, you're acknowledging that there was evidence. Your Honor, if I may, the only evidence that was presented as of the date of removal, at most, was evidence of residency, mere residency in the state. That was the only evidence presented. Okay, so let's start with that. What's illogical about the inference that if the, what is it, more than 90% of the class members or purported class members were residents of California at the specific time, that by the time of the date of the class action, that at least one-third of that number would constitute citizens of California? What's illogical about that? Four things, Your Honor. First of all, it completely ignores that U.S. citizenship is a prerequisite, and there was zero evidence of U.S. citizenship here. Okay, let's stop right there. Let me ask you, if you take a group of California residents, what percentage of those residents are likely to be U.S. citizens? Your Honor, it would be a complete guess for me to speculate on that, and that's exactly what the court did. There was zero evidence. Well, no, stop, stop, stop. I don't think it's illogical for a court to say, look, you've got a group like that, at least half of them are going to be citizens. Indeed, there are statistics available suggesting the number is substantially higher than that. So what's illogical? What's clearly erroneous about that inference? First of all, to the extent that there are any statistics, they were not in the record and before the court. Second of all, it ignores this court's prior rulings that residency alone is not enough to establish U.S. citizenship, nor to establish state citizenship. Well, I know something about some of those prior rulings. I've had the misfortune of having to go down this path before, and we've made the point that we observe that a party with the burden of proving citizenship may rely on the presumption of a continuing domicile, for example, that provides once established a person's state of domicile continues until provided with sufficient evidence of change. Your Honor, yes. So why can't the court rely upon that? Because, Your Honor, domicile was never actually proven here, and that is precisely the point. Domicile requires, first of all, U.S. citizenship, and second of all, it requires more than residency. It requires an intent to remain, as this court has held in Cantor and in Harris and in Liu and even in Mondragon and King, as I know Your Honor knows well. Those cases require more, and importantly, something to consider here are the severe and far-reaching ramifications if residency alone or even residency plus prior employment was held sufficient for proving U.S. and state citizenship. It would, first of all, result in a floodgate being forced open to federal court because if under 1332 a person's diversity can be proven or is proven merely by residence or even residence and prior employment, then upon notice of the same, whether it be in the complaint or prior employment paperwork, a defendant, for instance, will be forced to remove or possibly waive their ability to do so at a later date. That can result undeniably in improvident removals that are just unworkable before this court. Well, I think you've got to be careful to distinguish between cases involving groups and cases involving individuals. In this case, all the plaintiff needs to establish for the district court's satisfaction is that at least one-third of the people in this group are citizens of California. And it's a surprise reality to me to believe that, in fact, people in California are so mobile that if 90% plus were California residents when they were working there, that it's going to be less than one-third a short time later. That just doesn't make any sense. And so why is it we're supposed to demand more from the district court? Your Honor, there are two points to that. First of all, 1332, citizenship, the verbiage in there, there is a rich body of case law speaking to the fact that Congress was intentional in the word it used. It understood the distinction between residency and citizenship. And it chose to use citizenship. So if this court or if the lower court were found to be proper in presuming from residency alone, regardless of what we may think based on our own personal presumptions or personal experiences that where we reside means that we must be where we not only are a citizen but intend to remain, that unfortunately is guesswork. And something very important to keep in mind here is that Congress made CAFA different. CAFA is favored jurisdiction. All case law provides that. All presumptions run in favor of the court maintaining jurisdiction. This isn't a balancing test. Presumptions run in favor of the court maintaining jurisdiction, and there are only narrow abstention doctrines that can be applied here. And even sensible guesswork, which I understand, Your Honor, we're speaking to, that is precluded. Now, 1332 speaks not only to unit of class members under CAFA but also to individual defendants. And a finding that citizen under 1332 can be proven by merely establishing someone's prior residence or even current residence would result in property removals, both on single plaintiff cases and in CAFA cases. Because again, a defendant would be required to remove or waive their ability to do so upon notice of the same. Further, it would provide a carve-out, effectively, for class actions, employment class actions brought against California employers. Something that if that was Congress's intention, it simply wouldn't be complete and can't be done. This is not a hard case. This is a case where a plaintiff had three months of discovery. She had access to the unit of class. She had their last name, email addresses, phone numbers. She sent out a letter soliciting the various things she needed. Yet, she did not present that evidence to the court. No evidence of U.S. citizenship, despite this court's prior rulings in King, for instance, requiring U.S. citizenship proof was provided. Ms. Pickett, can I ask you a question? Maybe this question I want to ask is more properly directed to Ms. Davis, but I want to ask you, because you make reference to this, the notice that was sent out. I understood that to be a notice advising the putative class that a class action was pending. No, Your Honor. Not a notice that sought the questionnaire, complete the questionnaire, and return it. Your Honor, what the notice specifically says, and it can be found in Excerpt of Record 38, is it says that they're writing to you because they have questions about your residency and citizenship in California, because the defendant wants to have this case remain in federal court, and we believe it belongs to the state. Did it ask the potential class member to complete a questionnaire? It asked them to contact plaintiff's counsel to give them this information. Did it ask them to call plaintiff's counsel or the entity that sent out the notices? It gives Ms. Davis' e-mail and phone number and asks that they contact them so they can give them information on citizenship. Your argument is that Ms. Davis then didn't present any of that to the court, other than apparently folks at West Marine verified the accuracy of the summary of the results of sending out the notice? No, Your Honor. So there's a couple of things there. First of all, as this court has held to limit their class definition. They can do it that way. They can also do it by survey evidence to meet this burden. It's not necessarily an onerous burden. Now, in large interstate class actions, such as this one with nearly 2,000 short, foreseeable transient employees who worked for a very limited time as an employer over more than four years and record evidence in the record speaking to 75% turnover rate during each event in some instances, those cases are meant to be in federal court. Now, plaintiff could have presented the evidence to the court that was required, but she did not do so. The only evidence that she provided was at most evidence of residency. And what I mean by that is that she provided, based on the last known addresses that West Marine provided to plaintiffs, which again were provided at most instances at onboarding of short-term employees and provided even well before the class period began. Those addresses, all plaintiffs did was provide them to an administrator who said that they ran an online search to see for a portion of the class period if updated addresses were available. Now, importantly, the declaration to this fact doesn't speak to the fact that, one, only a portion of the class period was covered for the search, that only persons that affirmatively filed for post office exchange of address form would come up having an updated address, that the name and address on the form and that inserted for the search had to match perfectly, even to the extent that abbreviations for drive, for instance, would make it so that a perfect address match did not come back. And even if you look at the reliability of it, it's understandable why the declarant didn't speak to any of this. Because if you look at the website itself that was used, it speaks to a 4.1% success rate of finding updated addresses. The addresses were simply not verified in any way. But even if they were, let's assume that even residency was established for a high percentage of the class as of the date of removal. That is all that was established. Clearly, this court has held so clearly in prior cases that residency alone is not enough. Plaintiffs knew they had to provide more. They knew they had to provide U.S. citizenship. They knew they had to provide evidence as to an intent to hack in the state. And again, the only two directly computed class members are actually before the court. Class members are asked about their citizenship. So the fact that despite, which is plaintiff's whole premise, living and working in the state during the period of class number, during the class period, they were not citizens of California. That is all the court had before it. Do you want to save some time for rebuttal? Yes. Thank you. Okay. Let's hear from Ms. Davis. Good morning. May it please the court. Heather Davis on behalf of the appellee. A couple of points I want to address first about the appeal. We've never argued that this case affected the far-reaching scope of CAFA jurisdiction. This case is limited to the exception, the exception that was created by the legislature. For a court to decline jurisdiction if the home controversy exception has been met. And as your honors have pointed out, it only requires meeting a couple of factors, which includes that more than one-third of the citizens of California were citizens. And importantly, just to address the point about the far-reaching ramifications that appellant has urged on this court, we don't think so. We think that this case is very, very specific. And the reason why is this. The evidence that was put forth to the district court was not just as limited as appellant's counsel has said. First of all, there's nothing in the record whatsoever that addresses the fact that these addresses that were obtained and submitted into evidence were the result of employment records that were obtained years ago. In fact, it's quite to the contrary. And I would say that this case is actually quite interesting when compared to the King case in the sense that in the King case, when the same appellant's counsel was before your honor on that case, they tried to urge the district court to accept a stipulation there. They tried to urge the court to accept a stipulation that more than two-thirds of the class were California residents at some point in time. And the idea of judicial estoppel was floated by your honors at that point. And the reason why is because it's very important that a party cannot take advantage of a court and try to manipulate a court by representing something and then later backtracking. And essentially, that's what we have here. Because the evidence that was put forth, of course, was not just some random addresses that were obtained by these employees at the commencement of their employment. In fact, it was much different than that. We went further. And we obtained a declaration from the defendant and their counsel, which stated, as I believe one of your honors has pointed out, that this was 100% accuracy. And that was 100% accuracy based on the recent wage and wage statement records and the personnel files that were contained. And that was recent in the sense that these records were verified and put into evidence. And importantly, Magistrate Judge Elizabeth Laporte fashioned her order to ensure that there was accuracy in providing those addresses, that they were the most recent. So not only were they provided at some point during the beginning of employment, they were actually verified and evidence was put in about the tax records, about the wage statements, and other personal records. And that's why there was a declaration provided about the 100% accuracy. But we didn't rest on that alone, even though we believed that that would be enough based on Mondragon, that we met our burden and the burden would then shift with that presumption of continuing domicile to appellee to provide some evidence, which they provided nothing. Instead, we provided the evidence regarding the third party administrator not just conducting a notice of change of address search, although appellant has argued here that that was all that was provided. That's not the case, in fact. In addition to the notice of change of address, which relied on records, not limited to what appellant's counsel has urged here, they actually ran a skip trace on top of that and did perform an investigation to ensure that there was an accuracy. And that was actually the number that the district court, the Honorable Vincent Chabria, ruled on, is he ruled on the skip tracing. So he took the very, very minimal amount of assumptions that need to be made based on the evidence. And so going back to the actual law, the four points raised by appellant's counsel, in fact, Mondragon does not provide that a survey is required. And that's why there was no survey conducted in this case, on top of the fact that we had the verifications and the attestations and the investigation performed by the defendant themselves. Mondragon, in fact, rejected the Seventh Circuit Court of Appeal and other courts of appeal that have followed that line of thinking and said that there needed to be some evidence based on the entire record, and it wasn't an exceptionally difficult burden to meet in that case. And the court is allowed to look at and make inferences from the record. These inferences are reasonable inferences and common-sense inferences that can be made. And I don't think it falls beyond the reasonable inference that the fact that we provided evidence of their address at the commencement of their employment, their addresses confirmed later on that were provided through their W-2s and their wage statements and their personnel file, but we didn't rest there either. The additional evidence that was provided wasn't limited to any of that. The evidence also provided, one, that this was all of these employees, actually more than one-third of them were current employees at the time that we filed the complaint. And that's one of the factors that's looked at at citizenship is the time of employment and whether they're actively employed. In the notice of the removal of papers themselves, interestingly enough, the appellant actually cited to the fact that these employees make $14.36 an hour just over the minimum wage. And I want to drop just really quick back to the judicial estoppel argument is we didn't even rest there. We didn't even rest by getting the verification, the 100% verification and the representations made to the magistrate judge about the accuracy of these addresses. We went further than that. We actually asked for driver's license information contained in the file. We actually asked for EDD records. In my experience, many employees who have terminated their employment unfortunately do seek out unemployment, and that information is provided after they've been terminated in their file. We asked for information about where the bank accounts were located for all these class members. We were denied all that information. And the point drawing back to is we were asked for all of this information, but once we would obtain the verification and the accuracy and the investigation that was ordered by the magistrate judge that this was 100% accurate information verified by the other evidence in the record, which is the summary of the tax records and the wage statements, that was enough for us to meet our burden and to show the presumption of continuing domicile. At that point, it was appellants' burden to come up with some evidence whatsoever. They could have run their own NCOA search if they actually believed that, as appellants argued, that this was inaccurate. So let me ask you this. Is that presumption sufficient for establishing the U.S. citizenship requirement, as counsel argued? Yes, but we did actually, we didn't even stop there. We did put evidence in the record as well that this was a requirement that was asked for by the employer at the commencement of their employment. In response, there was no evidence provided otherwise, showing that their application had changed anymore. But we did put that in there, although we do not believe that the King case actually set forth a separate requirement showing the statutory factor of showing U.S. citizenship. We believe that the statutory factors applied by the district court were all that were required under D3, and we don't believe that there was actually an affirmative showing requirement, and nor could there be. I mean, that's the reason why the Ninth Circuit in Mondragon fashioned the way that it was, is that there needed to be some evidence in the record, and it didn't need to be exceptionally difficult. Now, I understand that for employment class actions, that we will probably be able to obtain evidence about a current employment, and we will be able to obtain evidence about their addresses, which may seem to be a lighter burden than other, but there's no difference here. We're still going to have the CAFA exception apply, and it was created for a reason, and that's the reason why Judge Chabria set forth all the factors, is that that exception exists for situations such as this, but I would say that this case is a little bit different, and the actions taken by both the appellant and appellant's counsel were the representations that were not just relied on by us as counsel. Judge LaPorte relied on those representations when she fashioned the order. When we were looking for additional information, she represented that there was 100% accuracy in these addresses at the time. So I would also point out that the Seventh Circuit and the Sixth Circuit have noted that surveys are required. It doesn't really say the degree of the surveys. I know that some have said that they need higher than a two-thirds standard, but we're not looking at that here. There was no survey conducted by me, and the record doesn't reflect that. That was an NCOA notice and part of our investigation, but there's no evidence in the record that there was a survey set forth by us. And the reason why is that when Judge Chabria did require or allow us to conduct some limited form of jurisdiction, he initially let us only have 40 days in order to conduct that discovery, meaning it didn't need to be onerous in order for us to go collect the evidence that we obtained. It ended up taking a month later because we had to enlist the help of Judge LaPorte in order to get the order from her where we could obtain the investigation, verifying the addresses. Just a couple of other points that I wanted to make is that the burden of proof or the standard of review here has been pointed out is the clearly erroneous, but I think that both parties agree at this point that this is actually an abuse of discretion standard based on the fact that Judge Chabria was applying discretion and applying the statutory factors. No, to disseny me to any factual determinations is clearly erroneous, but I think you're right. Our review is for abuse of discretion overall. Yes, thank you. Unless you have any other questions for me, that's all I have. No, we don't. So let's Ms. Pickett, you have a few minutes for rebuttal. Your Honor, yes, thank you. First of all, unfortunately there were a number of misrepresentations made in that statement. I'm going to go through a few of them. First of all, we did make clear in the record that the only addresses obtained from peer-to-class members were as of onboarding, and they were never updated. Therefore, the contention that we somehow verified the accuracy of these addresses at a later time past onboarding, much less as of the date of removal when the vast majority of these employees have long left our employment, is just wrong, and it's clearly wrong from the record. There similarly was no requests, no W-2s before the court, nothing of that nature. Moreover, Plaintiff stated that more than one-third of the employees as of the date of removal were current. That was actually undermined by her fact, by the statements made by Plaintiff in their own brief. Now, of course, Plaintiff did not attach the actual underlying evidence to any of these points. She speaks to the fact that there were something around 500 employees of West Marine that were peer-to-class members in the United States, not even in California. And that was well below the one-third number, first of all, and that was even as the United States as a whole. There is also no evidence, literally no evidence, of U.S. citizenship of peer-to-class members before the court. The only evidence Plaintiff submitted was on reply, improperly, evidence as to Plaintiff's declaring to her own U.S. citizenship. Zero evidence otherwise was before the court, which notably is why Plaintiff did not point to anything in the record. Now, the only argument that Plaintiff just set forth, every single aspect of it had to do with residency, which, again, this court has consistently maintained is not enough. First of all, this court also, or I should say second of all, this court has held, in Cantor, for instance, that U.S. citizenship is a separate requirement. So the concept that U.S. citizenship is not required here is simply not the case. That fails on its face. Finally, as to the standard of review, it is defendant's contention that actions very clearly de novo. Here, the evidence before the court is undisputed. The question is whether the mere evidence of residency before the court, whether those undisputed facts met the test for citizenship under CAFA, which, again, is a favored jurisdiction in which a court can only abstain from that jurisdiction with all presumptions running in favor of maintaining jurisdiction if the burden is met by Plaintiff and, importantly, sensible guesswork is not allowed. So this actually is a de novo standard of review. But even if it was abusive discretion, which it clearly is not, here, the court had literally zero evidence of U.S. citizenship. There would be a clear legal error, which meets the abusive discretion standard. And necessarily, because there was no evidence of U.S. citizenship or anything beyond residency, it was legal error and, therefore, an abuse of discretion. Now, the last point I'd like to make is as to the court's sua sponte raising of both the home state controversy and the discretionary exception. First of all, the home state controversy was raised by the court as sua sponte initially. And I don't know... I think we've got that in your brief. Pardon me, Your Honor? We've got that argument in your brief. It's pretty well covered. Okay, Your Honor. The only thing I would add is that citing to the Corona case for the Ninth Circuit from 2016, I believe it is, non-jurisdictional defects cannot be raised sua sponte. Here, jurisdiction was established. This is a non-jurisdictional defect. All right, we got it. You're over your time. So thank you, counsel. We appreciate your arguments this morning and your willingness to participate in our virtual court under these circumstances. So thank you very much. We appreciate it. Thank you. The case is Adams v. West Marine Products is submitted at this time, and that completes our morning session. So thank you all very much.
judges: Paez, Clifton, Harpool